UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TRAVIS ROE,

     Plaintiff,

v.                                                                          CASE NO. 3:22-cv-971-MMH-LLL

SHERIFF OF CLAY COUNTY, et al.,

     Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MAERTZ'S MOTION IN LIMINE

Plaintiff Travis Roe respectfully submits this memorandum of law in opposition to Defendant Maertz's Motion in Limine [Doc. 129] and requests that the Court deny the motion in its entirety.

### INTRODUCTION

After a full appellate review, the United States Court of Appeals for the Eleventh Circuit held that Deputy Maertz violated the Fourth Amendment by punching a prone, compliant arrestee thirty-four to thirty-seven times, that the right was clearly established at the time of the conduct, and that qualified immunity does not apply. *Travis Roe v. Clint Redmond, et al.,* No. 24-13588, 37-1 (11th Cir. Aug. 13, 2025) (per curiam). The case is now before this Court on remand for proceedings on that single claim.

1

Defendant Deputy Maertz moves to exclude two categories of evidence: (1) prior internal affairs complaints, investigations, and disciplinary history; and (2) the expert opinions of Thomas Tiderington. Both requests lack merit, misstate governing evidentiary law, and should be denied.

Defendant's motion seeks a blanket exclusion of relevant evidence. Federal law does not permit such an approach:  there is no clearly established rule requiring exclusion of internal affairs evidence or prior complaints. On the contrary, federal law permits their admission under multiple independent evidentiary pathways and the rules of evidence favor admission, not exclusion, subject to case-specific balancing. The Defendant's motion should be denied in its entirety.

## BACKGROUND

On the day of his arrest, Plaintiff Travis Roe was followed by Clay County Sheriff's Office (CCSO) deputies in unmarked vehicles. After a PIT maneuver stopped Roe's vehicle in his parents' driveway, Roe exited with his hands raised in the air. Deputy Redmond kicked Roe in the knee and struck him in the face with his firearm, causing Roe to fall to the ground.

Deputy Maertz then approached the lying motionless Roe and, according to Roe's account, which the Court of Appeals accepted as the operative version of facts, punched Roe thirty-four to thirty-seven times in the face and head while Roe lay face down with his arms extended in front of him. Roe told Deputy Maertz to stop. Deputy Maertz responded, "shut up you piece of shit," and continued. Only after striking Roe

2

did Maertz instruct Roe to place his hands behind his back, which Roe immediately did.

Deputy Maertz's internal affairs history includes, among other matters, a 2016 sustained complaint arising from an officer-involved shooting, a 2014 sustained complaint for improper identification of a suspect resulting in a thirty-day suspension, and multiple additional complaints for rudeness and conduct.

The Eleventh Circuit Court of Appeals vacated the District Court's grant of summary judgment as to the thirty-four to thirty-seven punches, holding that Roe's account establishes a triable Fourth Amendment violation and that the right was clearly established before Roe's arrest. The case is on remand for trial on that single claim.

**LEGAL STANDARD**

Relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a consequential fact more or less probable. Fed. R. Evid. 401. Exclusion under Rule 403 is permitted only where the danger of unfair prejudice *substantially* outweighs probative value, a 'high bar' that is not cleared simply by pointing to the fact that evidence is harmful. *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983). Courts disfavor motions in limine that seek categorical exclusion, reserving them for evidence that is 'clearly inadmissible on all potential grounds.' *United States v. Gonzalez,* 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).

The major function of Rule 403 is narrow: it is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its

3

prejudicial effect." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). It is not a tool for suppressing evidence that is genuinely important to the jury's task. To the contrary, the more essential the evidence, the greater its probative value, and the less appropriate exclusion becomes. *See United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983) (declining to find Rule 403 violation where testimony was "essential" and not introduced merely to bolster the proponent's case).  Here, as demonstrated below, the evidence Defendant seeks to exclude is not peripheral or cumulative, it goes to the heart of the only question before the jury.

Where any risk of misuse exists, limiting instructions are the preferred remedy.

## ARGUMENT

## I. DEPUTY MAERTZ'S DISCIPLINARY HISTORY IS ADMISSIBLE ON MULTIPLE INDEPENDENT GROUNDS.

Defendant's motion rests on a legal proposition that does not exist: that prior complaints, internal affairs findings, and disciplinary records are categorically inadmissible in federal excessive force litigation. Federal law provides multiple independent pathways for admission of this evidence, and Defendant's blanket exclusion argument fails at each one.

**A.    Rule 404(b) Expressly Permits This Evidence for Non-Propensity Purposes.**

Rule 404(b) does not bar all prior act evidence; it bars one specific use of it. A party may not introduce prior acts simply to show that a defendant is a bad person who behaved badly again. Rule 404(b)(2) permits prior act evidence to prove intent, knowledge, absence of mistake, notice, and pattern of conduct. Plaintiff offers Deputy Maertz's disciplinary history for each of these purposes and not to prove that he acted in conformity with bad character. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1309 (11th Cir. 2001) (prior misconduct evidence admissible in Section 1983 excessive force case).

The relevance is direct. The jury must decide whether Deputy Maertz deliberately chose to beat a prone man dozens of times or whether his conduct was, somehow, a mistake or aberration. A documented history that includes a sustained complaint from an officer-involved shooting and a thirty-day suspension for improper conduct makes the "mistake" theory substantially less plausible. That is precisely what Rule 404(b) is designed for.

If the Court has any concern that the jury might misuse this evidence for an improper purpose, Federal Rule of Evidence 105 provides the answer: a limiting instruction directing the jury to consider the evidence only for the purposes for which it was admitted. That remedy is well-established and fully adequate and exclusion is not warranted.

5

Notice is independently significant. Evidence that Deputy Maertz had prior sustained complaints demonstrates that he was aware of the limits of permissible force and the consequences of exceeding them. A reasonable officer with that knowledge who nonetheless chose to strike a non-resisting suspect thirty-four to thirty-seven times cannot credibly claim that the constitutional boundaries of his conduct were unclear.

## B.    The Hearsay Objection Fails Under Rule 803(8).

Defendant argues that internal affairs reports are hearsay and therefore inadmissible. That argument has a straightforward answer. The Federal Rules of Evidence contain a specific exception: Rule 803(8), that covers exactly this type of document. The rule allows records from a government office to come into evidence when those records contain factual findings from an official investigation, unless the party opposing admission can show the records are untrustworthy. Fed. R. Evid. 803(8)(A)(iii). Internal affairs investigations are conducted by a government agency as part of its official duties. That is precisely what Rule 803(8) was written to cover. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988) (where the Supreme Court clarified that "factual findings" under Federal Rule of Evidence 803(8) include conclusions and opinions so long as they are based on a factual investigation and are trustworthy). Defendant has identified nothing about these particular records that would make them untrustworthy, which means the exception applies and the hearsay objection fails.

6

There is an additional point worth noting. The CCSO did not treat its own disciplinary findings as informal internal documents, it transmitted them to the Florida Department of Law Enforcement as an official government record. Having formally submitted those findings to a state regulatory body in that capacity, Defendant is not in a position to turn around and argue in this Court that those same findings are unreliable out-of-court statements. That position is inconsistent with the way the CCSO itself treated the records.

## C.    Probative Value Substantially Outweighs Any Prejudice.

Rule 403's exclusionary mechanism is triggered only when prejudice *substantially* outweighs probative value. The word "substantially" is doing real work in that standard, and Defendant has not come close to clearing it.

The probative value of this evidence is high. The central question at trial is whether Deputy Maertz acted deliberately or made a reasonable mistake. Prior sustained complaints, one involving a shooting, one resulting in a suspension, make the mistake hypothesis difficult to sustain. The probative value is not speculative or marginal; it bears directly on the disputed factual question the jury must resolve.

There is no "unfair" prejudice within the meaning of Rule 403. The rule does not shield a party from evidence that is simply damaging to his case. It guards against evidence that inflames the jury for reasons untethered to the substance of the dispute. If anything, the appropriate response is a limiting instruction directing the jury to use the evidence only for proper purposes. That remedy is available and sufficient; exclusion is not.

7

### D.   The Evidence Is Independently Admissible for Impeachment.

Defendant's motion does not address impeachment, but it is an independent basis for admission that the motion cannot reach. Federal Rule of Evidence 607 provides that any party may attack the credibility of a witness. Fed. R. Evid. 607. Rule 608(b) further permits cross-examination regarding specific instances of conduct where those instances are probative of the witness's character for truthfulness or untruthfulness. Fed. R. Evid. 608(b). Deputy Maertz will testify. His account of events will be disputed. His credibility is therefore squarely at issue. Prior sustained disciplinary findings, including his department's own conclusion that he violated policy, bear on the reliability of his testimony and the weight the jury should give it. This basis for admission operates entirely independently of Rule 404(b). The question is not whether the evidence establishes a prior bad act for propensity purposes, it is whether it tends to undermine the witness's credibility before the jury. It does. Defendant's motion, which addresses only Rule 404(b) and Rule 403, does not engage with this ground at all and therefore provides no basis for exclusion of the evidence on impeachment grounds.

### E. Policy Violations Are Admissible Context, not a Substitute for Constitutional Analysis.

Defendant is correct that a violation of departmental policy does not, standing alone, establish a Fourth Amendment violation. Under *Graham v. Connor, 490 U.S. 386, 394–97 (1989)*, excessive force claims are governed by an objective

reasonableness standard that focuses on the facts and circumstances confronting the officer, not subjective intent. But that is the beginning of the analysis, not the end.

Evidence of departmental policy violations is relevant and admissible (to show what a reasonably trained officer in Defendant's position would have known and done) under the Federal Rules of Evidence, even though a policy violation does not independently establish a constitutional violation. The relevance flows directly from *Graham*. Under *Graham*, the constitutional question is whether the force used was objectively reasonable from the perspective of a reasonable officer on the scene, an inquiry that expressly accounts for the training, experience, and professional norms that govern how officers are expected to act. Fed. R. Evid. 401 defines relevance broadly: evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Whether a reasonable, trained officer would have used this level of force is the central fact of consequence here. Departmental policies reflect what officers are trained to do and what their agency has determined is appropriate, which bears directly on that question. The evidence is not offered to establish liability by policy violation alone. It is offered because it makes the objective unreasonableness of Deputy Maertz's conduct more probable than it would be without it. That is sufficient for admission under Rule 401, subject to Rule 403 balancing, which, as discussed above, Defendant has not satisfied.

Plaintiff offers the CCSO's General Order 3000.09 violation for that purpose, not to establish liability by fiat. The Eleventh Circuit Court of Appeals itself noted the policy violation in its discussion of this case. *Roe*, Doc. 37-1, at 7.

## II.  TIDERINGTON'S EXPERT OPINIONS SATISFY DAUBERT AND ARE ESSENTIAL TO THE JURY'S EVALUATION OF THE CASE.

Defendant's motion to exclude Thomas Tiderington rests on two arguments: that his opinions do not assist the jury and that they are impermissible legal conclusions. Neither holds up. The Eleventh Circuit Court of Appeals established the governing standard for expert admissibility in *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). Trial courts must consider whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* at 1259.

Mr. Tiderington satisfies all three prongs. His forty-four years of law enforcement experience — including more than twenty as Chief of Police — establish his qualifications; his methodology of reviewing incident reports, use-of-force records, video evidence, and deposition testimony against nationally recognized professional standards is reliable; and his testimony addresses specialized police practices that fall outside the common experience of lay jurors, which is precisely what Rule 702 requires.

### A.  Tiderington's Qualifications Are Unassailable.

Rule 702 requires that an expert be qualified by knowledge, skill, experience, training, or education. Tiderington's qualifications present no close question:

- Forty-four years in law enforcement, including more than twenty as Chief of Police;

- Over 4,800 hours of specialized training in use of force, investigations, and police operations;

- Managed the CALEA accreditation process (the national benchmark for law enforcement professionalism) for multiple agencies;

- Reviewed hundreds of use-of-force incidents in supervisory, command, and executive capacities;

- Trained thousands of officers nationwide for over four decades;

- Accepted as a qualified expert in both state and federal court; testified for plaintiffs and defendants alike.

Defendant offers no substantive challenge to these credentials. Defendant does not argue that Tiderington is unqualified, that his methodology is unreliable, or that he applied an improper standard. The motion targets only the content of his conclusions which is not a basis for exclusion under *Daubert* or Rule 702.

## B.    His Testimony Addresses Questions Beyond the Competence of Lay Jurors.

Expert testimony is admissible where it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Police practices experts satisfy that standard in §1983 excessive force cases because lay jurors lack the training to assess whether an officer's conduct conformed to professional standards. In *Samples v. City of Atlanta*, 846 F.2d 1328, 1334 (11th Cir.

11

1988), the Eleventh Circuit Court of Appeals emphasized that the expert witness, who had worked in the department for a long time, based his opinion on his personal observations, and his statements related to the issue of whether the Atlanta police force had a policy or practice of encouraging police brutality. Therefore, the court found the testimony admissible and concluded it should not have been stricken.

Expert testimony "will not help the trier of fact" only when it "offers nothing more than what lawyers for the parties can argue in closing." *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004). That is not this case. Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury. *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir. 1985), or if the expert testimony is cumulative or needlessly time consuming. See, e.g., *Hull v. Merck & Co., Inc.*, 758 F.2d 1474, 1477 (11th Cir.1985) (per curiam). Here, Mr. Tiderington's testimony is not cumulative. He is the only police practices expert in this case. It will not confuse or mislead the jury. To the contrary, it will provide the professional context necessary for the jury to evaluate conduct that falls outside their everyday experience.

The jury must decide whether it was reasonable for Deputy Maertz to punch a face-down, non-resisting man three dozen times before attempting to handcuff him. That question cannot be answered from common experience. Jurors do not know what protocols govern the division of roles between a cover officer and an arrest team member during a felony takedown. They do not know what use-of-force training instructs officers to do, and not do, once a suspect is prone and passive. They cannot

12

evaluate, without guidance, whether the sequence of events captured on video is consistent or inconsistent with accepted professional standards.

Tiderington addresses all of this. He explains what a properly executed high-risk felony arrest looks like, why the video evidence is inconsistent with Maertz's claim of active resistance, why beginning to strike before any handcuffing attempt violates professional standards, and why a reasonably trained officer would have recognized that no further force was needed. He will address proper police procedures when the arrestee is surrounded by several armed law enforcement officers. That testimony will materially assist the jury, which is all Rule 702 requires.

## C.   Tiderington Uses Professional Vocabulary, Not Legal Conclusions.

An expert may not instruct the jury on the law or tell it what legal conclusion to reach. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). But an expert may, and should, describe whether conduct conforms to the standards and norms of his professional field. Those are different things, and Tiderington did the latter. He anticipated this objection in his report and addressed it head-on:

> "*Opinions that I present in this report may use terminology that resembles legal terms or standards. Use of specific/similar legal terminology is not intended to draw legal conclusions or subvert the function of the court or inappropriately influence triers of the fact. The use of certain terms such as 'excessive force,' 'reasonable,' 'reckless,' 'negligent,' 'unreasonable,' and 'foreseeable' are commonly used in my*

13

*field of expertise, I used them often as a Police Chief, and when I train or communicate with law enforcement Officers.*"

That explanation is accurate. Words like "reasonable" and "excessive" are the daily vocabulary of law enforcement administration and are used in training curricula, after-action reviews, supervisory evaluations, and departmental policy. Prohibiting a police practices expert from speaking in the language of his profession would make his testimony artificially incomplete and would be contrary to how courts have consistently treated this issue. In *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir. 1993) (police expert may testify as to whether officer conduct conformed to accepted standards), the Court stated *"The district court seems to have deduced a blanket rule that expert testimony is generally inappropriate in excessive force cases from Wells v. Smith, 778 F.Supp.7 (D.Md.1991). To the contrary, expert testimony has often been admitted in such cases."*

The controlling distinction is between an expert who tells the jury what the *law* requires and an expert who tells the jury what accepted *professional practice* requires. Tiderington does the latter. He does not apply the Fourth Amendment as a lawyer would; he opines on whether conduct deviated from widely accepted law enforcement standards, a question that is the proper subject of expert testimony and that is distinct from the legal question of constitutional liability.

The fact that professional-standards testimony sometimes overlaps with legal terminology is not a ground for exclusion. If any discrete opinion is identified as crossing the line into pure legal conclusion, the remedy is a narrowing instruction as

14

to that specific opinion, not exclusion of a 295-page expert report from a forty-four-year law enforcement veteran.

### D. The Operational Plan Dispute Is a Factual Issue for Cross-Examination.

Defendant argues that Tiderington's opinion on the absence of a written operational plan is factually incorrect because a plan was produced in discovery. That dispute does not warrant exclusion. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (a dispute about the factual basis of an expert's opinion goes "to the weight, not admissibility, of the testimony."). Tiderington reviewed the investigative file provided to him, noted the absence of a written plan in that file, and drew conclusions from what he found. After the Defendant filed their Motion in Limine, undersigned counsel forwarded a copy of the written operational plan to Chief Tiderington and discussed it with him on March 9, 2026. Tiderington told counsel that even with the existence of this operational plan, it did not alter his overall conclusions regarding the use of force by CCSO. In any event, the operational plan observation is a single paragraph in a comprehensive report. Excising one discrete point does not justify excluding everything else.

### E. The Eleventh Circuit Court of Appeals' Own Analysis Confirms That This Testimony Is Necessary.

It would be difficult to read the Court of Appeals' opinion in this case and conclude that expert police practices testimony is unnecessary at trial. The Court's

analysis turned entirely on the questions Tiderington's report addresses: the significance of Roe's prone position, the relevance of his "superman" posture, the point at which a reasonable officer would recognize that resistance had ceased, and whether the volume of force was proportionate to any remaining need. *Roe*, Doc. 37-1, at 18–23. These are not legal abstractions; they are factual assessments that require an understanding of police training and professional standards. Tiderington is the expert witness who provides that understanding. Excluding him would leave the jury to decide the case's central question without the very expert context the Court of Appeals' analysis demonstrates is necessary.

## CONCLUSION

The Eleventh Circuit Court of Appeals has already determined that "Maertz violated the Fourth Amendment by striking Roe 34 to 37 times when Roe was on the ground, subdued, and compliant." *Roe*, Doc. 37-1, at 23. That appellate ruling did not resolve the factual disputes that remain for the jury, it confirmed that those disputes are genuine, that Roe's account is legally sufficient to support a verdict in his favor, and that this case must be tried. What the jury decides will depend entirely on the evidence placed before it.

Defendant now seeks to remove from the jury's consideration the two categories of evidence most central to that evaluation: Deputy Maertz's documented disciplinary history and the testimony of the only police practices expert in the case. Stripped of that evidence, the jury would be asked to assess the reasonableness of conduct that falls outside common experience, without the professional context

16

needed to evaluate it, and without knowledge of the officer's own department's prior findings about his conduct. That is not a fair trial — it is a truncated one.

Defendant's blanket exclusion arguments are inconsistent with the Federal Rules of Evidence, unsupported by controlling authority, and contrary to the preference for admission that the rules reflect. Therefore, the motion should be denied.

Dated: March 19, 2026

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Robert S. Mactavish, Esq.
Florida Bar No.: 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
Email: robert.mactavish@llgnational.com
*Attorney for Plaintiff*

17

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Robert S. Mactavish, Esq.

18